IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Janet Bunce,

      Plaintiff,

vs.                                          Case No. 14-2149-JTM

Portfolio Recovery Associates, LLC

      Defendant.

MEMORANDUM AND ORDER

The present Order addresses seven actions[1] brought pursuant to the Fair Debt Collection Practices Act (FDCPA) and the Kansas Consumer Protection Act (KCPA). The plaintiffs are debtors whose creditors "charged off the[ir] accounts," and sold them to defendant Portfolio Recovery Associates (PRA). Once the original creditors sold the accounts, they stopped sending monthly billing statements to the plaintiff debtors. In April of 2013, PRA filed suit in state court against Plaintiff Janet Bunce seeking a judgment. PRA voluntarily dismissed the action with prejudice two months later.

---

[1] The other actions are: *Spears v. PRA* (No. 14-2174-JAR); *Watkins v. PRA* (No. 14-2180-RDR); *Nunes v. PRA* (No. 14-2192-EFM); *Graves v. PRA* (No. 14-2214-CM); *Hague v. PRA* (No. 14-2216-RDR); *Brooks v. PRA* (No. 14-2266-JWL). In addition to the cases against PRA, plaintiffs (represented by the same counsel) have also instituted essentially identical claims against a similar entity, LVNV Funding, LLC. *See Hickman v. LVNV* (No. 14-2246-JTM), *Berry v. LVNV* (No. 14-2280-JTM), *Wilkerson v. LVNV* (No. 14-2324-JTM), and *Do v. LVNV* (Case No. 14-2325-JTM).

Bunce claims that PRA violated FDCPA Section 1692e(5) by threatening, and then bringing, the state action. The other six plaintiffs allege that PRA violated the KCPA and FDCPA Sections 1692f and 169e(8) by accruing interest on the debts, and informing a credit reporting agency of the increased debts. PRA thus, according to the plaintiffs, "report[ed] that interest was due for which there was no legal basis."

The court reviews the plaintiffs claims by focusing on their factual allegations rather than conclusory generalizations or formulaic recitations, *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007), and to decide whether those factual allegations are sufficient to show the claim "is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). In support of its motion to dismiss, PRA argues that the facts – that the original lenders stopped sending monthly statements, charged off the accounts and sold them to PRA, and that PRA later sought recovery for a facial amount higher than the charged off amount — simply do not present a plausible case of violating either the FDCPA or the KCPA. PRA agues that there is no allegation of a voluntary waiver by the original lenders of their right to interest, and in any case it was entitled to collect interest on the liquidated amounts of the loans as the prescribed statutory rate under Kansas law.

The court finds the Complaints (with the exception of Count 3 in *Bunce*) should be dismissed. Waiver of further interest charges is not evidenced by the cessation of monthly statements. While such a cessation *may* occur when a lender waives further interest charges, it may also happen if the creditor decides the debt is uncollectible, it has commenced a delinquency action, additional statements are precluded by statute, or if it

2

sells the debt. *Neff v. Capital Acquisitions & Mgmt. Co.*, 352 F.3d 1118, 1121 (7th Cir. 2003) (holding periodic statements are not required once credit card debts are assigned).

Under Kansas law, waiver may be express or implied. *See Iola State Bank v. Biggs*, 233 Kan. 450, 662 P.2d 563, 571 (1983). If implied, it "must be manifested in some unequivocal manner by some distinct act or by inaction inconsistent with an intention to claim forfeiture of a right. Mere silence of a party is not waiver unless such silence is under circumstances requiring the party to speak." *Patrons Mut. Ins. Ass'n v. Union Gas Sys.*, Inc., 250 Kan. 722 830 P.2d 35, 39 (Kan. 1992).

Here the plaintiffs have failed to allege that the original lenders explicitly or formally meant to waive their right to interest when they charged off the loans. Rather, they argued that waiver is implied by the facts that (1) the accounts were charged off, and (2) the original lenders stopped sending monthly statements.

The court finds that the plaintiffs' allegations fail to present a plausible basis for inferring any waiver. Charging off the delinquent accounts is a federal regulatory requirement. Uniform Retail Credit Classification and Account Management Policy, 65 FR 36903-01. Accordingly, it is not a voluntary action of the creditor. Similarly whether the original lender must send monthly statements is determined by federal law. The absence of such statements fails to suggest "in some unequivocal manner" that the lenders waived interest charges.

The plaintiffs contend that waiver may be inferred in light of the regulations defining when creditors must send monthly statements under the Truth In Lending Act.

3

But nothing in the relevant regulation, 12 C.F.R. § 226.5, precludes an assignee of the debt from seeking to recover interest. Section 226.5 determines when a "creditor" must supply financing statements, but the obligation to send statements ends after the sale of the account. *See* 15 U.S.C.A. § 1602(g) (a "creditor" is "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness"); 12 C.F.R. § 226.5(b)(1) ("creditors" must send periodic statements); *Neff v. Capital Acquisitions & Mgmt.* 352 F.3d 1118, 1121 (7th Cir. 2003). *See Terech v. First Resolution Management*, 854 F.Supp.2d 537 (N.D. Ill. 2012) (admitting that "it is difficult to see what the discontinued statements add to Plaintiff's waiver argument," and holding that "periodic statements or (lack thereof) add nothing to the inquiry").

Plaintiffs otherwise rely on the conclusion in *Terech*, where the court denied the defendant's motion to dismiss. In that case, the loan was sold from the original creditor to an intermediate buyer, and then to the defendant. The original creditor charged no interest for the five months prior to the sale, and the intermediate buyer charged no interest for the two-and-a-half years it held the debt. 854 F.Supp.2d at 539. In addition to the intervening sale and the extraordinary delay, the court noted "detailed allegations" by the plaintiff about standard banking practices. *Id*.

Both *Terech* and *Simkus v. Cavalry Portfolio Servs.*, No. 11-7425, 2012 WL 1866542 (N.D. Ill. May 22, 2012), another case cited by plaintiffs, are distinguishable. In *Simkus*, the original lender delayed two years after charging off the account, during which time it separately reported to credit bureau that the account value was unchanged, before selling

account to defendant, again for the charged off amount. Both cases contain allegations that the original lenders took voluntary actions demonstrating an intention to waive interest charges.

The court concludes that simply because the original creditors charged off the accounts and stopped sending month statements does not preclude the assignee of the accounts from seeking to collect interest. In reaching this conclusion, the court finds persuasive recent decisions of our distinguished neighbors to the east addressing virtually identical actions. *See Peters v. Northland Grp. Inc.*, No. 14-0488-ODS, 2014 WL 34854658, *1-2 (W.D. Mo. Sept. 30, 2014); *Peters v. Finanicial Recovery Sys.*, No. 14-00489-GAF, 2014 WL 4723287, *2-3(W.D. Mo. Sept. 18, 2014).

Other courts have concluded reached similar conclusions. *See Grochowski v. Daniel N. Gordon, P.C.*, No. C13-343 TSZ, 2014 WL 1516586, at *3 n.2 (W.D. Wash. Apr. 17, 2014) ("[c]ontrary to plaintiff's assertion, Capital One's decision to forego the contractual rate of interest did not relinquish its right to seek prejudgment interest at the statutory rate"; *Stratton v. Portfolio Recovery Assocs., LLC*, No. 5:13-147-DCR, 2013 WL 6191804, at *2-4 (E.D. Ky. Nov. 26, 2013). In the latter case, the court determined:

> PRA's request for statutory prejudgment interest under KRS § 360.010 from the date that Stratton's account was charged-off was not improper. Because KRS § 360.010 operates in the absence of a contractually agreed upon rate of interest, and because a waiver must be clear and unequivocal, the fact that GE waived its right to collect *contractual* interest on the debt did not necessarily waive its right to collect *statutory* interest.

2013 WL 6191804 at *4 (emphasis in *Stratton*). The plaintiffs have failed to show actions

5

evidencing a clear and unequivocal intent to waive the right to statutory interest.

In *Bunce*, the plaintiff acknowledges that the interest rate charged was statutory in nature. The other six plaintiffs argue against dismissal on the grounds that the interest was charged "at some unknown rate." (Dkt. 41, at 8). They argue that "[t]he need for ... further evidence" should therefore preclude dismissal of their claims. *Id*. But at this point, the problem is not that the plaintiffs lack *evidence*, but that they refuse to offer any *allegation* as to the nature of the interest charged. Notably, plaintiffs have made no effort to amend their complaints to raise such allegations. The bare possibility that the interest was other than statutory in nature is insufficient to create a plausible claim for relief.

*Stratton*, the plaintiffs contend, reached its conclusion "incorrectly" and "improperly," since it is contrary to the "clear reading" of the federal statute. (Dkt. 41 at 10). And they state that "*Grochowsky* merely parrots *Stratton*." *Id.* Any imposition of interest under state law, they contend, is preempted by the federal Truth In Lending Act. They argue that K.S.A. 16-201 is different from the Kentucky statute at issue in *Stratton*, and could not justify any statutory interest here because it only applies "when no other rate of interest is agreed upon." Finally, they note that the Sixth Circuit recently reversed *Statton*, finding that the district court erred in assuming that statutory interest could be imposed if the right to contractual interest had been waived. *See Stratton v. PRA*, No. 13-6574, 2014 WL 5394517 (6th Cir. Oct. 24, 2014).

The court finds that the plaintiffs' arguments fail to demonstrate any illegality by PRA under Kansas law. The Sixth Circuit's decision in *Stratton* turned on a unique feature

of the Kentucky interest statute, which sets forth a statutory interest rate of 8%, states that parties may agree to a higher rate, but that if the parties so agree, they "shall be bound for such rate of interest." K.R.S. 36.010(1). The Sixth Circuit interpreted this to mean that under Kentucky law, "[a] party's right to collect statutory interest is extinguished, superseded by her right to collect an interest rate she has specified by contract." *Id.* at *3. In reaching this conclusion, the court explicitly distinguished *Peters* and *Grochowski* on the grounds that the statutory interest provisions in Missouri and Washington "do not contain Kentucky's mandatory language that bars the imposition of statutory interest after a contractual rate of interest has taken effect." *Id.* at * 4 n. 1.

The Sixth Circuit supported this distinction by quoting the Missouri statute, which provides:

> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; for money recovered for the use of another, and retained without the owner's knowledge of the receipt, and for all other money due or to become due for the forbearance of payment whereof an express promise to pay interest has been made.

Kansas law, in K.S.A. 16-201, provides:

> Creditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due; for money lent or money due on settlement of account, from the day of liquidating the account and ascertaining the balance; for money received for the use of another and retained without the owner's knowledge of the receipt; for money due and withheld by an unreasonable and vexatious delay of payment or settlement of accounts; for all other money due and to become due for the forbearance of payment whereof an express promise to pay interest has been made....

Both the Kansas and Missouri statues lack the mandatory "shall be bound" language which was a key element of the Sixth Circuit's decision in *Stratton*. The Kansas statute is applicable because there was no agreement between the plaintiffs and PRA, and the plaintiffs have failed to show how PRA would be precluded from the protection of the Kansas statute. The court agrees with *Peters* and *Grochowski,* and holds that PRA was permitted to seek statutory interest under Kansas law.

Plaintiffs' preemption argument is entirely generic in nature, and fails to cite any authority indicating that the Truth In Lending Act was intended to displace state interest statutes. Further, it is not an independent argument, since it depends entirely upon the plaintiffs' favored reading of § 226.5 as precluding assignees from charging interest. The court follows *Peters* in finding that a collection agency may seek statutory interest, where appropriate under state law, without violating the FDCPA.

PRA argues that the plaintiffs' KCPA claims fail because they do not fall within the scope of the statute. The KCPA prohibits false or deceptive actions by "suppliers" to consumers. K.S.A. 50-626, 50-627. "'Supplier' means a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer." *In State ex rel. Miller v. Midw. Serv. Bureau of Topeka, Inc.*, 623 P.2d 1343, 1349 (Kan. 1981), the Kansas Supreme Court held that the KCPA applies if

> (1) The debt sought to be enforced came into being as a result of a consumer transaction; (2) The parties to the original consumer transaction were a "supplier" and a "consumer" as defined in the act; and (3) The conduct

>complained of, either deceptive or unconscionable, occurred during the collection of, or an attempt to collect, a debt which arose from the consumer transaction *and was owed by the consumer to the original supplier*.

(Emphasis added). As PRA notes, Miller relied in part on the Ohio Consumer Protection Act, which "uses language comparable to the Kansas act in defining a 'supplier.'" Id. at 1346. And Ohio has explicitly distinguished between collections agencies hired by original lenders (which are considered "suppliers" and therefore subject to the consumer protection act), and purchasers of debt (which are not). *See Wess v. Storey*, 08-00623, 2009 WL 2870253, *3-5 (S.D. Ohio Sept. 1, 2009); *Jenkins v. Hyundai Motor Fin. Co.*, 389 F. Supp. 2d 961, 969–71 (S. D. Ohio 2005). See generally *Liggins v. May Co.*, 373 N.E.2d 404, 405 (Ohio Misc. 1977)).

PRA, of course, is an independent assignee of the accounts, not an assignor. It was not the original supplier of the debt or transaction, which arose prior to its acquisition of the accounts. Nor is it a collection agency hired by the original creditor, while the debt "was owed by the consumer to the original supplier."

The plaintiffs argue that PRA's argument is "overly literal." (Dkt. 41, at 13). The court, however, is not free to disregard the clear text of a statute simply whether or not it agrees with the result. PRA is not a "supplier" of credit services within the meaning of the statute.

Finally, the court finds that Count 2 of the *Bunce* action, which presents a claim under 15 U.S.C. § 1692e(5), should also be dismissed. This section of the FDCPA prohibits debt collectors from "threaten[ing] to take any action that cannot legally be taken or that is not intended to be taken." Bunce argues that PRA violated the statute by implicitly

threatening her with civil litigation.

But PRA actually commenced a civil action in state court, and the plaintiff makes no contention that the filing of the lawsuit itself was illegal. Accordingly, there is no basis for a claim under § 1692e(5). *See Delawder v. Platinum Fin. Servs. Corp.*, 443 F. Supp. 2d 942, 948 (S.D. Ohio 2005) (no § 1692e(5) claim when collection agency actually filed a lawsuit, rather than simply threatening to do so). This court previously has reached the similar conclusion. *See Bieber v. Associated Collection Servs.*, 631 F.Supp. 1410 (D. Kan. 1986) (finding that a letter stating that it had asked its attorney to file suit if account was not paid was not a threat of future action). *See also Kalebaugh v. Berman & Rabin, P.A.*, No. 13-2288-DDC, 2014 WL 4259150, *11 (D. Kan. Aug. 28, 2014).

Bunce attempts to salvage this claim by asserting that the actual violation was the "[t]he threat, while inherent in any lawsuit, but distinct, is to pursue a judgment." (Dkt. 41, at 16). Bunce supplies no authority for the proposition that the filing of a collection action, entirely legal in itself, represents a violation of § 1692e(5). As noted earlier, the state civil action was not prohibited by law, and Bunce points to no PRA communications that are idle threats. PRA's filing of a lawsuit, the only threat made to plaintiff, was actually carried out. *See Bieber*, 611 F.Supp. at 1416 (finding no violation of the statute "because the threatened action – filing of a lawsuit — had been taken").

IT IS ACCORDINGLY ORDERED this 12th day of November, 2014, that the defendant's consolidated Motion for Dismissal or Partial Dismissal (Dkt. 33) in the respective PRA cases is hereby granted as provided herein.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE